NOTICE

*The text of this opinion can be corrected before the opinion is published in the* <u>*Pacific*</u> <u>*Reporter*</u>. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

| | |
|---|---|
| MALIK AHMAD TAHA, | Court of Appeals No. A-11166 |
| Appellant, | Trial Court No. 3AN-10-1918 CR |
| v. | |
| | **O P I N I O N** |
| STATE OF ALASKA, | |
| Appellee. | No. 2489 — February 5, 2016 |

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael L. Wolverton, Judge.

Appearances: Dan S. Bair, Assistant Public Advocate, Appeals and Statewide Defense Section, and Richard Allen, Public Advocate, Anchorage, for the Appellant. Diane L. Wendlandt, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Michael C. Geraghty, Attorney General, Juneau, for the Appellee. Pamela D. Weiss, Assistant Municipal Attorney, and William D. Falsey, Municipal Attorney, appearing at the request of the Court for the Municipality of Anchorage.

Before: Mannheimer, Chief Judge, Allard, Judge, and Hanley, District Court Judge.[*]

Judge MANNHEIMER.

---

[*]   Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

A provision of the Anchorage Municipal Code — section 09.28.026 — gives police officers the authority, at their discretion, and without a court order, to impound the motor vehicle of any person who is arrested for, or charged with, any of the following six offenses: (1) soliciting for prostitution, (2) driving while under the influence, (3) refusing to submit to a breath test, (4) driving with a suspended or revoked license, (5) driving without having vehicle insurance, or (6) driving while not carrying proof of vehicle insurance in one's immediate possession.

The defendant in this case was arrested by the Anchorage police for driving under the influence. The defendant wanted to call his father to come retrieve the car, or to have his passenger take custody of the car, but the arresting officer told the defendant that this would not be allowed — that the police were required to seize and impound the vehicle under the municipal ordinance.

The question presented in this appeal is whether the seizure of the defendant's vehicle was illegal under either the Fourth Amendment to the United States Constitution or Article I, Section 14 of the Alaska Constitution.

The State argues (and the superior court found) that seizures of vehicles pursuant to AMC 09.28.026 are justified under the "community caretaker" function. This legal doctrine refers to the authority of the police (or other government agents) to seize and remove vehicles from the streets when they impede traffic or otherwise threaten public safety or convenience.

But as we explain in this opinion, the seizure and impoundment authorized by AMC 09.28.026 is not aimed at, nor is it limited to, vehicles that might be impounded under a "community caretaker" rationale. Under this ordinance, it is irrelevant whether the impounded vehicle was impeding traffic or posed any other threat to public safety or convenience, or whether the vehicle or its contents were at risk of theft or vandalism.

Rather, the impoundment authorized by AMC 09.28.026 hinges on whether there is probable cause to believe that the driver committed one of the six specified crimes.

We therefore reverse the superior court's ruling on this issue, and we remand this case to the superior court for consideration of whether the vehicle seizure in this case might be lawful under some other rationale.

*Underlying facts*

In the early morning hours of February 20, 2010, an Anchorage police officer observed a car being driven erratically on C Street, so the officer initiated a traffic stop. The driver pulled into a parking lot, and the officer followed him.

During this traffic stop in the parking lot, the officer observed that the driver of the car, Malik Ahmad Taha, appeared to be intoxicated. Taha performed poorly on field sobriety tests, and the officer decided to arrest him for driving under the influence.

After Taha was informed that he was under arrest, he told the officer that his father would come to retrieve the car. The officer replied that Taha's father would not be allowed to retrieve the car — that the car was going to be impounded and towed to storage. Taha also asked the officer if his passenger (who was apparently sober) might drive the car. The officer said no. He told Taha that he had no choice but to impound the vehicle: "Legally, I have to do that." The officer then handcuffed Taha and placed him in the back seat of the patrol car.

In the meantime, a second police officer arrived on the scene. After this second officer learned that Taha was being arrested for driving under the influence, this

second officer began searching through Taha's vehicle. The officer later described this search as an "inventory" of the contents of the car, in preparation for its impoundment.

This search of Taha's vehicle yielded drug paraphernalia. The police then applied for a search warrant to conduct another search of the car. This second search (under the authority of the warrant) yielded additional evidence, including a quantity of methamphetamine.

Taha was charged with fourth-degree controlled substance misconduct (possession of methamphetamine), driving under the influence, and fourth-degree weapons misconduct (because Taha had a firearm in the car, and he was intoxicated).

Taha's attorney filed a pre-trial motion asking the superior court to suppress all of the evidence discovered in the car, on the ground that the impoundment and initial search of his car violated the Fourth Amendment to the United States Constitution and Article I, Section 14 of the Alaska Constitution — and that the search warrant was the fruit of this initial illegal search.

In its opposition to this suppression motion, the State relied on Anchorage Municipal Code 09.28.026, which gives the police the authority, at their discretion, to seize and impound the vehicle of any person arrested for driving under the influence (as well as five other listed crimes). The State argued that this municipal ordinance was a constitutional exercise of the Municipality's "community caretaker" function — the authority to seize and remove vehicles from the streets if they are "impeding traffic or threatening public safety".

See *South Dakota v. Opperman*, 428 U.S. 364, 369; 96 S.Ct. 3092, 3097; 49 L.Ed.2d 1000 (1976), where the United States Supreme Court recognized this "caretaking" authority of the government.

The State also relied on the Supreme Court's decision in *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), where the Court held that

it was constitutional for police regulations to give arresting officers the discretion to impound an arrestee's vehicle rather than leaving it locked and parked in a safe place, so long as the officer's decision in this matter was governed by standardized, objectively ascertainable criteria (aside from the desire to investigate crime). *Bertine*, 479 U.S. at 375-76 & n. 7; 107 S.Ct. at 743 & n. 7.

The superior court apparently found the State's arguments convincing, because the court denied the suppression motion without comment.

Taha went to trial a few month later, and he was convicted of all three charges. He now appeals, renewing his argument that it was unconstitutional for the police to impound his vehicle, at least without giving him an opportunity to call someone else to retrieve the vehicle.

*The Anchorage impoundment ordinance is not justified under a "community caretaker" rationale*

As we explained at the beginning of this opinion, AMC 09.28.026.A gives police officers the authority, at their discretion, to impound the motor vehicle of any person who is arrested for, or charged with, any of the following six offenses: (1) soliciting for prostitution,[1] (2) driving while under the influence,[2] (3) refusing to submit to a breath test,[3] (4) driving with a suspended or revoked license,[4] (5) driving

---

[1] AMC 08.65.030.

[2] AMC 09.28.020.

[3] AMC 09.28.022.

[4] AMC 09.28.019.

without having vehicle insurance,[5] or (6) driving while not carrying proof of vehicle insurance in one's immediate possession. [6]

Section B of this ordinance declares that every such vehicle is "a public nuisance", and section B further declares that a primary purpose of the ordinance is "removing public nuisances". But this is a non-standard use of the term "public nuisance", and it appears to be mere window dressing.

According to *Black's Law Dictionary* (10th ed. 2014), the phrase "public nuisance" means

> [a]n unreasonable interference with a right common to the general public, such as a condition dangerous to health, offensive to community moral standards, or unlawfully obstructing the public in the free use of public property.

*Black's* explains that "the obstruction of a highway is a public nuisance". Thus, to the extent a criminal suspect's vehicle might be blocking traffic at the time of the suspect's arrest, the vehicle might properly be termed a "public nuisance". But the Anchorage impoundment ordinance does not require proof that a vehicle was blocking traffic, or that it otherwise posed a threat (or even an inconvenience) to the public's use of the roadways.

As noted earlier, the ordinance does not authorize the impoundment of *all* vehicles being operated by criminal suspects at the time of their arrest. Instead, it is limited to the six offenses listed in section A of the ordinance. This is one indication that the ordinance is not aimed at preserving the public's unobstructed use of the roadways

---

[5] AMC 09.28.030.A.

[6] AMC 09.28.030.B.

— for, if that were the aim of the ordinance, one would expect it to apply to all vehicles that obstruct a public highway following the driver's arrest.

A second major indication that the Anchorage ordinance has nothing to do with preserving the free use of public roadways is that the ordinance authorizes the impoundment of a person's vehicle whenever the police have probable cause to believe that the vehicle was involved in one of the six listed offenses — even if the suspect is not arrested until much later, or even if the suspect is *never* arrested.

According to subsections D.2 and E.3 of the ordinance (read in combination), the police are authorized to seize a motor vehicle and tow it away, without a court order, if *either* "[t]he impoundment is incident to an arrest" *or* "[t]here is probable cause to believe [that] the motor vehicle was operated, driven[,] or in the actual physical control of an individual [during the commission of one of the enumerated offenses]".

In other words, even if the arrest is made hours, days, or weeks after the offense was committed — or, indeed, even if the person is never arrested — the ordinance nevertheless authorizes the police to seize and tow the person's vehicle, without a court order, if they have probable cause to believe that, during the commission of the crime, the person operated or drove the vehicle, or had physical control of the vehicle.

(For instance, if the police find out weeks later that someone was driving without carrying proof of their vehicle insurance in their immediate possession, the police can impound the person's car without a court order, even though the person has, in the meantime, placed the necessary documentary proof of insurance in the car, and the car is sitting in their driveway.)

Because the Anchorage ordinance authorizes the impoundment of vehicles without regard to whether the vehicle poses any public danger or inconvenience at the

time it is seized, the ordinance can not be justified under a "community caretaker" rationale.

*Even if we tried to limit the scope of the ordinance to situations where impoundment of a vehicle was truly linked to a community caretaker function, the ordinance would still be fatally flawed because it lacks standardized, objectively ascertainable criteria for determining when to impound a vehicle*

Even though the Municipal ordinance authorizes impoundments of vehicles with no regard to whether there is a discernible community caretaker interest at stake, the ordinance might conceivably be saved by giving it a limiting construction — narrowing the operation of the ordinance to instances where the government could, in fact, show that impoundment of a particular vehicle furthered a community caretaker interest.

In *South Dakota v. Opperman*, 428 U.S. 364, 96 S.Ct. 3092, 49 L.Ed.2d 1000 (1976), the United States Supreme Court acknowledged that the police are entitled to engage in "community caretaking functions" with respect to automobiles, divorced from the detection or investigation of crime, or from the acquisition of evidence relating to crimes. And as part of this community caretaker function, the police may impound vehicles that "jeopardize ... the public safety [or] the efficient movement of vehicular traffic." *Opperman*, 413 U.S. at 368-69, 96 S.Ct. at 3097.

But although the Supreme Court has acknowledged that the police may impound motor vehicles under a community caretaker rationale, the Court has consistently stated that such impoundments are lawful only if they are conducted under the authority of, and in conformity with, governing regulations or police policies — and only if these regulations or policies are reasonably related to the proper exercise of the community caretaker function.

These regulations or policies can give the police some discretion as to how to handle a particular situation. For example, in *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987), the Supreme Court held that the impoundment of a vehicle was constitutional when it was conducted under police regulations that gave arresting officers the discretion to impound an arrestee's vehicle, rather than leaving it locked and parked in a safe place, so long as the officer's decision in this matter was governed by standardized, objectively ascertainable criteria (aside from the desire to investigate crime).

Thus, in *Bertine*, the Court upheld the challenged impoundment regulation because "the discretion afforded the [municipal] police was exercised in light of standardized criteria, related to the feasibility and appropriateness of parking and locking a vehicle rather than impounding it." [7] In an accompanying footnote, the Court noted that the governing police department directive on impoundment forbade officers from pursuing a "park and lock" alternative if "the approval of the arrestee cannot be obtained" or if "there is reasonable risk of damage or vandalism to the vehicle". [8]

But the Anchorage municipal ordinance at issue in the present case gives the police broad discretion — apparently unbridled discretion — to impound vehicles simply because the police have reason to believe that the vehicle was involved in one of the six enumerated offenses, regardless of whether there is any community caretaker need to move or secure the vehicle.

With regard to the impoundment of vehicles incident to a person's arrest, subsection C.1 of the ordinance expressly declares that "[i]mpoundment through a seizure of [a] vehicle incident to an arrest is at the discretion of the arresting officer."

---

[7] *Bertine*, 479 U.S. at 375-76, 107 S.Ct. at 743.

[8] *Id.*, 479 U.S. at 376 n. 7, 107 S.Ct. at 743 n. 7.

And under subsections D.2 and E.3 of the ordinance (read in conjunction), the police have unfettered authority to seize and impound vehicles, without a court order, and without any connection to an arrest, whenever "[t]here is probable cause to believe [that] the motor vehicle was operated, driven[,] or in the actual physical control" of a person who committed one of the six enumerated offenses.

(With regard to this "probable cause" provision, it is clear that the ordinance is speaking, not of a judicial officer's finding of probable cause, but rather of a police officer's belief that there is probable cause — because the ordinance declares this to be one of the situations where a seizure can be conducted "without a court order".)

Relying on the Supreme Court's decision in *Bertine*, the State argues that the Anchorage ordinance is constitutional even though it gives officers such broad discretion to impound a vehicle. But although *Bertine* holds that the officer's decision can be discretionary, *Bertine* still insists on the requirement that the officer's discretion be governed by established regulations or formal policies, and *Bertine* further requires that those regulations or policies embody standardized, objectively ascertainable criteria that are reasonably related to the proper exercise of the community caretaker function.

As far as the record in this case shows, the Municipality of Anchorage has no such regulations or formal policies. Indeed, according to the record, the only relevant policy governing impoundments is an informal Anchorage Police Department policy that directs its officers to impound motor vehicles in *all circumstances* where impoundment is authorized by the ordinance. In other words, nothing is left to the officer's discretion. (This is precisely what the officer told Taha in the present case.) The police department simply instructs its officers to impound every vehicle that falls within the scope of the ordinance, regardless of whether there is any community caretaker rationale for the impoundment.

Thus, *Opperman* and *Bertine* provide no constitutional justification for the Municipality's practice.

*Conclusion*

The superior court denied Taha's suppression motion under the rationale that impoundments of vehicles under AMC 09.28.026 are justified by the municipal police force's "community caretaker" function. We REVERSE that ruling. The vehicle impoundments authorized by AMC 09.28.026 are not linked to any community caretaker rationale. Moreover, these impoundments are not governed by any regulation or formal policy that establishes standardized, objectively ascertainable criteria for impoundment based on valid community caretaker concerns.

Even though the superior court was wrong when it concluded that the impoundment of Taha's vehicle was justified under a community caretaker rationale, it is possible that the seizure and ensuing search of Taha's vehicle might be justifiable under other rationales. We therefore remand this case to the superior court for renewed consideration of Taha's suppression motion.

We do not retain jurisdiction of this case.