NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific* *Reporter*. *Readers are encouraged to bring typographical or other formal errors to the attention of the Clerk of the Appellate Courts:*

*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

# IN THE COURT OF APPEALS OF THE STATE OF ALASKA

ERIC SHERRON MCGUIRE,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-11268
Trial Court No. 3AN-10-6660 CR

O P I N I O N

No. 2603 — June 1, 2018

Appeal from the Superior Court, Third Judicial District, Anchorage, Jack W. Smith, Judge.

Appearances: Catherine Boruff, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. Eric A. Ringsmuth, Assistant Attorney General, Office of Criminal Appeals, Anchorage, and Michael C. Geraghty, Attorney General, and James E. Cantor, Acting Attorney General, Juneau, for the Appellee.

Before: Mannheimer, Chief Judge, Allard, Judge, and Suddock, Superior Court Judge.[*]

Judge MANNHEIMER.

---

[*] Sitting by assignment made pursuant to Article IV, Section 16 of the Alaska Constitution and Administrative Rule 24(d).

Eric Sherron McGuire appeals his convictions for fourth- and sixth-degree controlled substance misconduct. He asserts that the evidence against him was obtained as a result of an unlawful pat-down search. For the reasons explained in this opinion, we conclude that the evidence against McGuire was obtained lawfully, and we therefore affirm his convictions.

*Underlying facts*

In May 2010, McGuire was stopped by the police because his vehicle had studded tires after the May 1st seasonal deadline.

The officer who made the traffic stop, Jon Butler, asked to see McGuire's driver's license and proof of insurance. McGuire handed Butler a certificate of insurance, and he told Butler that the insurance was current. But when Butler called McGuire's insurance company to verify that the insurance policy was in force, a company representative told Butler that the policy had been canceled some three months earlier.

After receiving this information, Officer Butler decided to impound McGuire's vehicle.

(As authority for impounding McGuire's vehicle, Butler relied on Anchorage Municipal Code § 09.28.026.A. This ordinance gave police officers the authority, at their discretion, and without a court order, to impound the motor vehicle of any person who was arrested for driving without having vehicle insurance. In *Taha v. State*, 366 P.3d 544 (Alaska App. 2016), we declared this ordinance unconstitutional. However, McGuire never sought suppression of the evidence against him on the theory that the impoundment of his vehicle was illegal.)

Because McGuire's vehicle was going to be impounded, McGuire and his passenger were ordered to step out of the vehicle. Butler also summoned a backup officer to the scene.

While Butler, McGuire, and his passenger were waiting at the scene, McGuire called his brother-in-law for a ride. Officer Butler assured McGuire that his brother-in-law would be allowed to remain at the scene while the police were processing McGuire's vehicle, and that McGuire was not going to be arrested — that he would be allowed to leave with his brother-in-law when their encounter was done.

(McGuire's brother-in-law arrived at the scene at approximately the same time as the backup officer.)

After Officer Butler asked McGuire to get out of his vehicle, Butler asked McGuire if he was carrying any weapons. McGuire answered that he was carrying a pocket knife in his right-front pants pocket. Butler asked McGuire for permission to take possession of this pocket knife until their encounter was over. McGuire agreed to this. Butler then patted McGuire's pocket to locate the knife.

During this pat-down, and before Butler located the pocket knife, Butler encountered an object in McGuire's pocket that felt like a marijuana pipe. Butler asked McGuire if the object was, in fact, a marijuana pipe. McGuire admitted that it was. At that point, Butler reached into McGuire's pocket and removed the pipe. Butler saw that the pipe contained unsmoked marijuana in its bowl. After removing this pipe, Butler removed the pocket knife from McGuire's pocket.

Butler then conducted a pat-down search of McGuire's remaining pockets. During this continued search, Butler felt an object that appeared to be a syringe in McGuire's back pocket. Before removing this syringe, Butler asked McGuire if he had any other drugs or drug paraphernalia on his person. McGuire admitted that he had a

plastic container of marijuana in one of his other pockets. Butler then removed the syringe and the plastic container of marijuana.

When Butler asked McGuire what the syringe was doing in his back pocket, McGuire replied that he "like[d] to have some fun from time to time", and that he used the syringe to inject himself with liquified Dilaudid.

Butler then engaged McGuire in further conversation about his drug use, and he asked McGuire whether there were any other drugs in his car. McGuire told Butler that there was a jar containing one ounce of marijuana behind the driver's seat, and that the car also contained another half-ounce of marijuana in individual packages, which McGuire was planning to sell.

At this point, McGuire's car was seized as evidence, and it was transported to a secure police facility. Butler later applied for a search warrant (to authorize the police to conduct a more thorough search than would otherwise be authorized pursuant to an impoundment). The warrant was issued, and the ensuing search of McGuire's car yielded the one and a half ounces of marijuana that McGuire had described, plus one pill of morphine.

The police also obtained a warrant to seize and search McGuire's mobile phones. These phones contained text messages that revealed McGuire's involvement in marijuana sales.

Based on this episode, McGuire was indicted on two counts of fourth-degree controlled substance misconduct — one count for possessing morphine, and the other count for possessing one ounce or more of marijuana with intent to distribute it. By information, the State added a misdemeanor charge of sixth-degree controlled substance misconduct (simple possession of marijuana).

*The litigation of McGuire's suppression motion*

Following his indictment, McGuire asked the superior court to suppress most of the evidence against him. McGuire alleged that Officer Butler violated his rights under the Fourth Amendment when, after Butler retrieved the pocket knife, Butler continued to pat down McGuire's other pockets. McGuire also alleged that Officer Butler violated his Fifth Amendment rights by subjecting him to custodial interrogation without giving him the warnings required by *Miranda v. Arizona*. [1]

The superior court upheld the pat-down search, but the court agreed with McGuire that, by the latter stages of the encounter, McGuire was in custody for *Miranda* purposes. The court therefore suppressed some of McGuire's statements to Butler. However, the court ruled that the remaining evidence was admissible — *i.e.*, all the physical evidence discovered during the pat-down of McGuire's pockets, plus the self-incriminatory statements that McGuire made during the earlier portions of the encounter.

Having upheld the admissibility of this evidence, the superior court then upheld the search warrants for McGuire's vehicle and his mobile phones.

Following a jury trial, McGuire was convicted of all three drug charges.

*Summary of our analysis*

The State argues that Officer Butler's search of McGuire's pockets was a permissible pat-down search for weapons during an investigative stop, as authorized by *Terry v. Ohio*. [2] For the reasons we are about to explain, we reject this contention.

---

[1]   384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[2]   392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

McGuire argues that Officer Butler's pat-down of his pockets was strictly prohibited by the United States Supreme Court's decision in *Knowles v. Iowa*.[3] For the reasons explained in this opinion, we reject this contention as well.

We instead conclude that McGuire's case presents a situation that is not addressed in *Knowles*: an instance where, during a routine traffic stop, (1) the police discover probable cause to arrest the motorist for *another* offense, and (2) this other offense is the type of crime where it is reasonable to suspect that the motorist may be carrying evidence of the crime on their person.

The question we must answer is this: When, as in McGuire's case, the motorist's other offense is within the category of offenses where the officer has the discretion to issue a summons rather than make an arrest, and when the officer decides to issue a summons rather than make an arrest, may the officer nevertheless conduct a pat-down search of the motorist's outer clothing for evidence of the other crime before allowing the motorist to depart?

For the reasons explained in this opinion, we conclude that the answer is "yes".

*The State's argument that Officer Butler could continue to search McGuire's pockets because the officer reasonably believed that McGuire was armed and dangerous*

On appeal, the State argues that Officer Butler had reason to believe that McGuire was armed and dangerous, and thus the officer was authorized to search all of McGuire's pockets for weapons.

---

[3]   525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998).

We have reviewed the record, and it does not support the State's contention. Officer Butler had no articulable reason to believe that McGuire was dangerous. As Butler conceded at the evidentiary hearing in the superior court, McGuire was calm during the entire encounter, and he did nothing aggressive or antagonistic — nothing to make Butler suspect that he was dangerous. Moreover, Butler continued his pat-down search of McGuire's pockets even after he had taken possession of McGuire's knife — that is, when Butler had no articulable reason to believe that McGuire was armed.

To justify a continued pat-down search of McGuire's pockets under the rationale of officer safety, the State had to show that the circumstances of Butler's encounter with McGuire gave Butler reason to believe that McGuire was armed and dangerous (as that phrase is defined for purposes of *Terry v. Ohio*). In other words, the circumstances must have disclosed (1) a significant possibility that McGuire might want to harm Butler or his backup officer, and (2) a significant possibility that McGuire was still carrying something in his pockets that McGuire could use to inflict bodily harm on the officers — something other than the pocket knife that McGuire had already voluntarily disclosed, and that Butler had already secured. [4]

The State argues that this foundation was established because McGuire lied twice to Officer Butler. (McGuire lied when he told Butler that his vehicle insurance was currently in force, and then he lied when he told Butler that there were no other objects in his pockets besides the pocket knife.) Based on these two lies, plus the fact that McGuire was carrying a pocket knife and a marijuana pipe, the State argues that Butler

---

[4] *See* Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (5th ed. 2012), § 9.6(a), Vol. 4, pp. 855-862 (discussing the required justification for pat-down searches when the investigatory stop is not based on suspicion of an inherently dangerous crime); W. Ringle, *Searches and Seizures, Arrests and Confessions* (2nd ed. 1983), § 13.6(a), p. 13-42.2.

could reasonably conclude that there was a substantial possibility that McGuire was armed and dangerous.

We disagree. McGuire voluntarily disclosed his possession of the pocket knife as soon as he was asked, and he readily consented to having Officer Butler take control of the knife for the duration of their encounter. We note that the legislature has singled out pocket knives as one of the weapons that a person need *not* immediately disclose to a law enforcement officer (absent a request) during a police contact.[5] And the State offers nothing to support its assertion that a person's possession of a marijuana pipe constitutes an affirmative indication that the person is dangerous.

The State also notes that McGuire and the two other people at the scene (McGuire's passenger and McGuire's brother-in-law) outnumbered the officers at the scene three-to-two. But as we noted earlier, Officer Butler testified that McGuire was calm during the entire encounter, and that McGuire did not say or do anything defensive or aggressive.

With regard to the presence of McGuire's brother-in-law, we note that Officer Butler explicitly allowed McGuire to call his brother-in-law to come give him a ride, even though this would necessarily mean that there would be at least three people at the scene who were aligned with McGuire's interests (McGuire himself, his passenger, and McGuire's brother-in-law). Moreover, the backup officer testified that McGuire's brother-in-law readily complied with the officer's directive to remain in his vehicle until the officers' encounter with McGuire was ended.

And with regard to the activities of McGuire's passenger, the record is completely silent, other than the fact that this passenger complied with the officers' directive to get out of McGuire's car. Presumably, either Officer Butler or the backup

---

[5] *See* AS 11.61.220(a)(1)(A).

officer (or both of them) would have said something during their testimony if McGuire's passenger had done anything to arouse their suspicions or to heighten their sense of danger.

In short, we reject the State's contention that the facts known to the police justified a continued pat-down search of McGuire's pockets under *Terry v. Ohio* after Officer Butler secured the pocket knife and the marijuana pipe.

*Why we nevertheless conclude that it was lawful for Officer Butler to conduct a pat-down of McGuire's other pockets after the officer secured the pocket knife*

McGuire concedes that, because he gave permission for Officer Butler to secure his pocket knife, it was lawful for Butler to pat down McGuire's pocket to locate and retrieve the knife. And McGuire does not challenge Butler's discovery and seizure of the marijuana pipe, which occurred while Butler was conducting the pat-down search for the knife.

However, McGuire challenges Butler's continued pat-down search of McGuire's other pockets — the pat-down search that Butler conducted *after* he located and secured McGuire's marijuana pipe and knife.

McGuire relies on *Knowles v. Iowa*, 525 U.S. 113, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998), a case where the United States Supreme Court limited the scope of a police officer's authority to search a motorist during a routine traffic stop. In *Knowles*, the Supreme Court held that even when an officer has probable cause to arrest a motorist for violating the traffic laws, the officer cannot conduct a full search of the motorist's person — *i.e.*, cannot conduct a "search incident to arrest" — unless the officer actually arrests the motorist.

The Supreme Court explained that, in instances where the motorist's only offense is a violation of the traffic laws, and where the officer simply issues a citation to the motorist, the encounter is more akin to an investigative stop — *i.e.*, a brief detention of limited scope for a limited purpose. [6] This being so, the two traditional justifications for a full search of an arrestee's person do not apply. There will be no "extended exposure" between the officer and the motorist (as would be the case when an officer actually takes a person into custody and transports them to a police station or a jail). [7] And for most traffic infractions, there will be no reason to believe that the motorist is carrying evidence of the infraction on their person. [8]

For these reasons, the Supreme Court held in *Knowles* that the officer's authority to search a motorist's person during a routine traffic stop is limited to the pat-down searches for weapons authorized by *Terry v. Ohio*. [9] In other words, the officer can pat down the motorist's clothing for weapons if the officer has a reasonable suspicion that the motorist is both armed and dangerous, but the officer cannot pat down the motorist for evidence. [10]

---

[6] *Knowles*, 525 U.S. at 117, 119 S.Ct. at 488.

[7] *Ibid*.

[8] *Id.*, 525 U.S. at 118-19, 119 S.Ct. at 488.

[9] *Ibid*.

[10] *Terry*, 392 U.S. at 21, 27, 30-31; 88 S.Ct. at 1879, 1883, 1884-85; *Free v. State*, 614 P.2d 1374, 1378 (Alaska 1980). *See also Saepharn v. State*, 355 P.3d 592, 595-96 (Alaska App. 2015):

"In [*Minnesota v.*] *Dickerson*, [508 U.S. 366, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993)], the Supreme Court re-affirmed the principle that when the police conduct a pat-down search during an investigative stop, the purpose of the pat-down is to ensure

(continued...)

Based on *Knowles*, McGuire argues that Butler acted unlawfully when, after retrieving the pocket knife from McGuire's right-front pants pocket, Butler continued to search McGuire's other pockets.

But the facts of *Knowles* are materially different from the facts of McGuire's case. *Knowles* involved a situation where the motorist's only known crime was a traffic offense, and where the officer had no reason to believe that the motorist was carrying evidence of a crime on his person. McGuire's traffic stop may have started out as the same kind of "routine" traffic stop, in the sense that, initially, Officer Butler only had probable cause to believe that McGuire had violated the traffic laws. But while Butler was retrieving McGuire's pocket knife, he lawfully discovered the marijuana pipe (containing unsmoked marijuana) in McGuire's pocket.

McGuire's possession of marijuana was a separate offense under Alaska's drug laws at the time (*i.e.*, before the voters of Alaska legalized the possession of small amounts of marijuana for personal use). And the discovery of the pipe and the marijuana gave Butler an articulable reason to believe that McGuire might be carrying additional evidence of a drug offense.

Nevertheless, even though Butler's discovery of the marijuana pipe and the unsmoked marijuana gave Butler probable cause to arrest McGuire for possession of marijuana, Butler did not arrest McGuire. Indeed, even after finding the marijuana, Butler repeatedly assured McGuire that he was *not* going to arrest him. And Butler continued to assure McGuire that he would be permitted to leave, even after McGuire

---

[10]   (...continued)
officer safety, and the scope of this search must be limited to '[what] is necessary for the discovery of weapons'. *Id.*, 508 U.S. at 373, 113 S.Ct. at 2136. It is unlawful for the police to expand the scope of the pat-down beyond this limit in an effort to discover evidence of a crime. *Ibid.*"

admitted that his car contained larger amounts of marijuana that were intended for sale. True to his word, Butler released McGuire at the end of their encounter (after writing him a summons).

Thus, McGuire's case presents the following facts: (1) During a routine traffic stop, a police officer discovers probable cause to arrest the motorist for *another* offense, and (2) this other offense is the type of crime where it is reasonable to suspect that the motorist may be carrying evidence of the crime on their person, but (3) the offense is within the category of offenses where the officer has the discretion to issue a summons rather than make an arrest, [11] and (4) the officer decides to issue a summons to the motorist rather than arrest them.

The question we must decide is this: Under these facts, does the officer have the authority to pat down the motorist's outer clothing for evidence of this other crime before issuing the summons and allowing the motorist to leave?

Courts from other jurisdictions have struggled with this question, because this fact situation falls within a grey area left in the wake of the Supreme Court's decision in *Knowles*. (See the lengthy discussion of this issue in Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* (5th ed. 2012), § 5.2(h), Vol. 3, pp. 171-79.)

*Knowles* does not hold that full-blown searches of a motorist's person are *never* authorized unless the motorist is subjected to a custodial arrest. Rather, the *Knowles* decision is more limited: the Supreme Court declared that a full-blown search of a motorist's person is not authorized when the motorist's only known crime is a traffic offense, and when there is no reason to believe that a search of the motorist's person will reveal evidence of this traffic offense.

---

[11]  *See* AS 12.25.180(a).

Thus, the *Knowles* decision does not provide a direct answer to cases like McGuire's — cases where a routine traffic stop yields probable cause to support the motorist's arrest for another offense, and where there is reason to believe that the motorist may be carrying evidence of this other offense on their person, but the police officer still wishes to end the encounter by issuing a summons rather than making a custodial arrest.

We find ourselves in agreement with the approach taken by the Virginia Supreme Court in *Lovelace v. Commonwealth*, 522 S.E.2d 856 (Va. 1999), where the court held that, in these circumstances, a police officer can lawfully engage in measures short of a full-blown search incident to arrest:

> [*Knowles* holds that] the nature and duration of [a traffic stop] are significantly different and less threatening than in the case of an officer effecting a custodial arrest, [so] the rationales justifying a full field-type search are not sufficient to authorize such a search incident to the issuance of a citation. [But] when a police officer issues a citation or summons in lieu of a custodial arrest, the officer can nevertheless impose some further intrusions, consistent with the Fourth Amendment, if either historical rationale for the "search incident to arrest" exception is present [so long as] the scope of these further intrusions is limited to what is necessary to answer the concerns raised by the presence of either historical rationale. In other words, an encounter between a police officer and an individual that is similar to a routine traffic stop and results in the issuance of a citation or summons may involve some degree of danger to the officer or some need to preserve or discover evidence sufficient to warrant an additional intrusion, but it will not necessarily justify a full field-type search.

*Lovelace*, 522 S.E.2d at 859.

McGuire's case does not require us to delineate the outer limits of this authority to search or to conduct other "intrusions", because McGuire's case involves only the pat-down search of McGuire's pockets.

We hold that, because the officer had probable cause to arrest McGuire for a drug offense, and because the officer had reason to believe that McGuire might have other evidence of that offense in his clothing, the officer was authorized to conduct a pat-down search of McGuire's pockets — even though the officer had already decided that he was going to issue a summons to McGuire and then allow him to leave.

*Conclusion*

The judgement of the superior court is AFFIRMED.